# NO. 12-16-00231-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS* | § | *APPEAL FROM THE* |
| *FOR THE BEST INTEREST* | § | *COUNTY COURT AT LAW* |
| *AND PROTECTION OF J.L.* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

J.L. appeals from an order authorizing the Texas Department of State Health Services (the Department) to administer psychoactive medication-forensic. In one issue, J.L. challenges the legal and factual sufficiency of the evidence to support the trial court's order. We affirm.

## BACKGROUND

On August 4, 2016, Dr. Stephen Poplar signed an application for an order to administer psychoactive medication-forensic to J.L. In the application, Poplar stated that J.L. was subject to an order for inpatient mental health services issued under Chapter 46B (incompetency to stand trial) of the Texas Code of Criminal Procedure. He asked the trial court to compel J.L. to take four psychoactive medications, including antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics. Poplar concluded that these medications were the proper course of treatment for J.L. and that, if he were treated with the medications, his prognosis would be fair. Poplar considered other medical alternatives to psychoactive medications, but determined that those alternatives would not be as effective. He believed the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and J.L.'s best interest. Poplar also considered less intrusive treatments likely to secure J.L.'s agreement to take psychoactive medications.

On August 9, the trial court held a hearing on the application. At the close of the evidence, the trial court granted the application. The trial court found that the allegations in the

application were true, correct, and supported by clear and convincing evidence. Further, the trial court found that treatment with the proposed medications was in J.L.'s best interest and that J.L. lacked the capacity to make a decision regarding administration of the medications. The trial court authorized the Department to administer the requested psychoactive medications to J.L. This appeal followed.

<u>**SUFFICIENCY OF THE EVIDENCE**</u>

In his sole issue, J.L. argues that the evidence is legally and factually insufficient to support the trial court's order to administer psychoactive medication-forensic. More specifically, J.L. contends that the State failed to prove, by clear and convincing evidence, that he lacked the capacity to make a decision regarding administration of medication, and that treatment with the proposed medications was in his best interest.

**<u>Standard of Review</u>**

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, we consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29. Further, we must consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

2

**Order to Administer Psychoactive Medication**

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (West 2010). The court may issue an order if it finds by clear and convincing evidence after the hearing that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication, and (2) treatment with the proposed medication is in the best interest of the patient. *Id.* § 574.106(a-1). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). "Capacity" means a patient's ability to (1) understand the nature and consequence of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.101(1) (West 2010). In making its findings, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is treated with psychoactive medication, (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication, and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication. *Id.* § 574.106(b) (West 2010).

**Hearing on Application**

At a hearing, Poplar testified that he completed the application for an order to administer psychoactive medication-forensic and swore that all the statements in the application were true and correct. He stated that he was J.L.'s treating physician and that J.L. was currently under a court order for inpatient mental health services. Poplar testified that J.L. was suffering from bipolar I disorder, most recent episode manic, severe, with psychotic features, and that he had verbally, or otherwise, refused to accept medication voluntarily. Poplar stated that J.L. had been charged with violating a protective order, a Class A misdemeanor, but that none of the proposed medications would interfere with J.L.'s ability to confer with his counsel on his underlying

3

criminal charge. If J.L. experienced any side effects, Poplar could adjust or change the proposed medications.

According to Poplar, he believed that J.L. lacked the capacity to make decisions regarding the administration of psychoactive medications because he did not believe he was suffering from any symptoms of a mental illness. Accordingly, Poplar did not believe that J.L. could rationally weigh the risks and benefits of accepting the treatment. According to Poplar, J.L.'s symptoms of mental illness included pressured speech, tangential thinking, some persecutory delusions, unrecognized auditory hallucinations, and mood lability. He was unable to explain the risks versus the benefits of taking the proposed medications to J.L. Poplar explained that when he attempted to talk to J.L. about taking medications, J.L. "got really pumped up and agitated and [Poplar] had to change the subject." Poplar stated that in meetings with Poplar, J.L. resisted the idea of taking psychoactive medications. He also stated that he was unable to have a rational conversation with J.L., and that J.L. did most of the talking in their meetings. Poplar denied that J.L. presented a danger to himself or anyone else while in the hospital.

According to Poplar, J.L. has been on psychoactive mediations in the past and has had at least one prior psychiatric hospitalization. He stated that in J.L.'s previous hospitalization, he responded to treatment and was discharged. According to Poplar, he would review J.L.'s previous hospitalization records before prescribing any medications. He testified that treatment with the proposed medications was in the proper course of treatment for J.L. and was in his best interest. He stated that the benefits to J.L. outweighed the risks of taking the proposed medications, and that J.L. would regain competency faster if he took these medications.

J.L. testified that he was not taking any medications, and that he would not take the proposed psychoactive medications. He did not believe that he had a mental illness that needed treatment. J.L. stated that he was falsely accused in 2008 and was brought to the hospital "under my consent." However, he also stated that he "didn't know nothing about it," and appeared to be referring to the 2008 hospitalization. He admitted refusing medications at that time. He stated that "these individuals" were about to break a needle in his arm, and tried to throw him down and inject him with some kind of medication.

Then, J.L. discussed his "false imprisonment," stating that he was "filing conversation I cross here," and that he "need[ed] all the confirmation fault in [his] attention." He admitted that

4

he has been incarcerated for the past six years, was released from prison in May 2015, and filed charges of false imprisonment. He stated that he could not do anything but have a trial and "carry on about [his] business." He refused to "get over into the words" that he spoke with his attorney and another individual.

Then, J.L. appeared to discuss his current charges, stating that something was written on a paper at the Upshur County jail and that he "carried on" about these procedures. He stated "three seconds" after his release from prison in May 2015, he began to be harassed. He also discussed a letter that his aunt could obtain from the postal service or pull from his file. This letter seemed to include a conversation that was brought to his door "out across [his] property." J.L. denied knowing the individual named on the protective order, but he stated that he wanted a trial on the issue. Finally, he claimed that he was "messed around at a public building."

**Analysis**

J.L. does not dispute that the evidence is legally and factually sufficient to show that he is under a court order to receive inpatient mental health services. Thus, we will consider whether the evidence is legally and factually sufficient to support a finding that he lacked the capacity to make a decision regarding the administration of psychoactive medications, and that treatment with the proposed medications was in his best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1).

In the application, Poplar stated that he believed J.L. lacked the capacity to make a decision regarding administration of psychoactive medications because J.L. believed that he did not have a mental illness, and due to this lack of insight, he was unable to rationally weigh the risks and benefits of treatment. Further, Poplar determined that, if J.L. were not administered these medications, the consequences would be prolonged hospitalization, and the risk of psychosis becoming "treatment refractory" increased.

At the hearing, Poplar testified that J.L. did not feel he needed medications despite being diagnosed with a psychotic disorder with psychotic symptoms. He also stated that J.L. had been on psychoactive medications in the past and had at least one prior psychiatric hospitalization. According to Poplar, he was unable to have a rational conversation with J.L. regarding taking the proposed medications because he "got really pumped up and agitated and [Poplar] had to change the subject."

5

Considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction that (1) J.L. lacked the capacity to make a decision regarding administration of the proposed medications, and (2) treatment with the proposed medications was in his best interest. *See id.*; *see also In re J .F.C.*, 96 S.W.3d at 266. Therefore, the evidence is legally sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266.

Having determined that the evidence is legally sufficient to support the finding, we now address factual sufficiency of the evidence. *See In re C.H.*, 89 S.W.3d at 27-29. J.L. asserted that he would not take the proposed psychoactive medications because he did not believe that he had a mental illness that needed treatment. He referred to a prior psychiatric hospitalization, stating that certain "individuals" attempted to break a needle in his arm, tried to throw him down, and tried to inject him with some kind of medication. The right to refuse treatment, and the right of patients, generally, to direct the course of their treatment are important. By its very nature, however, involuntary treatment is against the stated wishes of a patient. The trial court must consider J.L.'s preferences and beliefs, but need not simply defer to them. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(b).

J.L. testified that he did not believe he needed psychoactive medication because he was not mentally ill. Poplar testified that J.L. was mentally ill, had symptoms of a mental illness, could not rationally weigh the risks and benefits of accepting treatment, and had at least one prior psychiatric hospitalization. It is presumed that the trial court gave J.L.'s preferences and beliefs due consideration. The basic thrust of Poplar's testimony, that J.L.'s mental illness precluded his consideration of taking psychoactive medication, was unrebutted. Furthermore, J.L. did not allude to any side effects or religious objections to taking these medications.

Based upon our review of the record as a whole, we conclude that the conflicting evidence is not so significant that a reasonable trier of fact could not have reconciled the evidence in favor of its finding. *See In re J.F.C.*, 96 S.W.3d at 266. Accordingly, the trial court could have formed a firm belief or conviction that J.L. lacked the capacity to make a decision regarding administration of the proposed psychoactive medications and that the proposed medications were in J.L.'s best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106 (a-1); *see also In re C.H.*, 89 S.W.3d at 25. Therefore, the evidence is factually sufficient to support the trial court's order. We overrule J.L.'s sole issue.

## DISPOSITION

Having overruled J.L.'s sole issue, we *affirm* the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered January 31, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 31, 2017**

**NO. 12-16-00231-CV**

**THE STATE OF TEXAS FOR THE
BEST INTEREST AND PROTECTION OF J. L.**

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. 41,972)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*